UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIE KNAPP,

                Plaintiff,              Case No. 19-13326
                                                     Honorable Victoria A. Roberts
                                                     Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 14, 17)

Plaintiff Marie Knapp ("Knapp") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF No. 14; ECF No. 17) that have been referred to this court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I. RECOMMENDATION**

For the reasons set forth below, the Court recommends that the Commissioner's Motion for Summary Judgment (**ECF No. 17**) be **GRANTED**, Knapp's Motion for Summary Judgment (**ECF No.14**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the Administrative Law Judge's ("ALJ") decision be **AFFIRMED**.

**II. REPORT**

    **A.**     **Procedural History**

On October 28, 2015, Knapp filed an application for DIB benefits, alleging disability

beginning on April 17, 2014.  (Tr 215).  Knapp's application was denied on July 28, 2016.  (Tr. 106).  Thereafter, Knapp filed a timely request for an administrative hearing, which was held on May 3, 2018, before ALJ James Kent.  (Tr. 33-59).  Knapp, who was represented by attorney Dennis Little, testified at the hearing as did vocational expert ("VE") Joanne Pfeffer.  (*Id.*).  On October 30, 2018, the ALJ issued a written decision holding that Knapp was not disabled.  (Tr. 7-25).  On September 13, 2019, the Appeals Council denied review.  (Tr.1-3).  Knapp filed for judicial review of the final decision on November 12, 2019.  (ECF No. 1.)

### B.     Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view

of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

      C.      **The ALJ's Findings**

Following the five-step sequential analysis, ALJ Kent found that Knapp was not disabled under the Act. At Step One, the ALJ found that Knapp had not engaged in substantial gainful activity since July 1, 2016. (Tr. 13). The ALJ found that Knapp's part-time work at Arby's did "not constitute disqualifying work activity." (*Id.*). At Step Two, the ALJ found that Knapp had the following severe impairments: "chronic obstructive pulmonary disorder (COPD)/asthma, degenerative disc disease of lumbar spine, hypertension, depression, intellectual disorder." (Tr. 13). At Step Three, the ALJ found that Knapp's impairments did not meet or medically equal "Listings 3.02 [lumbar issues], 12.04 [mental impairments], or any other listing." (*Id.*).

The ALJ then assessed Knapp's residual functional capacity ("RFC"), concluding that Knapp was capable of performing light work as defined by 20 C.F.R. § 416.967(b) with the following list of exceptions: "the claimant can occasionally climb, balance, stoop, kneel, crouch, or crawl; must avoid concentrated environmental irritants such as fumes, odors, dusts, gases; must avoid extreme heat/humidity; *can perform simple, routine, and repetitive work*." (Tr. 15)(emphasis added).

At Step Four, the ALJ found that Knapp was capable of "performing [her] past relevant work as a fast food worker." (Tr. 19). The ALJ also stated, based in part on VE's testimony, that

Knapp was capable of performing a significant number of jobs in the national economy. (Tr. 20). As a result, the ALJ concluded that Knapp was not disabled under the Act. (Tr. 20).

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human*

*Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

  **E.**  **Analysis**

  In her summary judgment motion, Knapp raises a single issue – that "the ALJ's RFC assessment, specifically regarding mental health limitations, is unsupported by substantial evidence."  (ECF No. 14, PageID.2500.)  Knapp points out that although the ALJ found that she had moderate difficulties in concentration, persistence, or pace ("CPP"), the only non-exertional limitation he included in Knapp's RFC is that she could perform only "simple, routine, and repetitive work."  (Tr. 14-15).  Knapp claims that under *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005), this limitation is insufficient to properly take into account her CPP difficulties.  (ECF No. 14, PageID.2502.)  Knapp goes on to state that because under *Edwards*[1], "it is difficult to accept that moderate means anything less than 20% to 30% of the time at work, [she] case would be unable to perform any work in the national economy."  (ECF No. 14, PageID.2502.)  Then, Knapp argues that since the hypothetical question the ALJ posed to the VE

---

[1] It is actually under *Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557, at * 10 (E.D. Mich. July 28, 2009)("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work.  Thus, 'moderate' concentration problems ... need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence.  Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient.").

5

did not include a limitation that Knapp would be off task 20% to 30% of the workday, he did not adequately reflect her limitations. (*Id*. at PageID.2503.) Alternatively, Knapp suggests that the ALJ should have included some other unspecified non-exertional "limitations relating to performing at a consistent pace, work that does not require changes or adaptations in work setting or duties, work with production quotas, or work with a down the line co-worker depending on his productivity." (*Id.*, PageID.2502.)

The Commissioner responds by arguing that "the ALJ marshaled substantial evidence to support the way he translated his 'paragraph B' finding into his RFC evaluation." (ECF No. 17, PageID.2518.) The Commissioner points out that Knapp's citation to *Edwards* is incorrect, and that Knapp was, in fact, quoting to a passage from *Taylor v. Comm'r of Soc. Sec*, No. 10-12519, 2011 WL 2682682, at *7 (E.D. Mich. May 17, 2011), adopted by 2011 WL 2682892 (E.D. Mich. Jul 11, 2011), where this Court stated that—"in some instances"—an RFC limitation to unskilled work "may" not accommodate a moderate CPP limitation, because such limitations are "not always" consistent. *Id*. Because the Commissioner's analysis of these issues is correct, and the RFC adopted by the ALJ is supported by substantial evidence in the record, the ALJ's decision should be affirmed.

       1.     *Legal Standards as to CPP*

In *Edwards v. Barnhart*, the claimant suffered from a combination of physical and mental impairments. *Edwards, supra* at 923. Similar to this case, the plaintiff argued that the ALJ failed to incorporate her moderate limitations in CPP into her RFC. *Id*. at 929. The Court agreed with plaintiff, reasoning:

> Again, in the present case, while finding that Plaintiff has a "moderate limitation in her ability to concentrate, persist and keep pace," the ALJ's limitations were with co-workers, supervisors and the public, and to "jobs entailing no more than simple, routine, unskilled work" (R. 18–19, 248).

6

> While close, these are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE.

*Id*. at 930-31.

Notably, although the Court ruled for the plaintiff in *Edwards*, its reasoning was very fact specific. *Id*. The Court made no sweeping holding as to functional limitations that needed to be in an ALJ's RFC if a claimant had moderate limitations as to CPP. *Id*.

In *Taylor v. Commissioner of Social Security*, the claimant also suffered from a combination of physical and mental impairments. *Taylor v. Comm'r of Soc. Sec.*, No. 10-12519, 2011 WL 2682682, at *7 (E.D. Mich. May 17, 2011), adopted by 2011 WL 2682892 (E.D. Mich. July 11, 2011). Again, the plaintiff argued that the ALJ failed to incorporate her moderate limitations in CPP into her RFC because the plaintiff was simply limited to "unskilled work." *Id*. *6. The Court held that "the ALJ's decision to omit a concentration limitation from his hypothetical to the VE is supported by substantial evidence." *Id*. at *10. The Court reasoned:

> In analyzing this case law, the Court agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace because the difficulty of a task does not always equate with the difficulty of staying on task. *See e.g., Green v. Comm'r of Soc. Sec.,* No. 08–11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009)("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems ... need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence. Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient."); *Edwards v. Barnhart,* 383 F.Supp.2d 920, 930 (E.D. Mich. 2005)("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job.").
>
> However, the Court also finds that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled work" but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision. Indeed, in a virtually identical case, another court in this District explained:

7

> Taken in isolation, the hypothetical limitations consisting of "[s]imple routine tasks in a low stress environment" and "minimal changes in the work place setting" might appear inadequate to account for "moderate" concentrational and pacing deficiencies. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of "moderate" limitations findings are not incompatible.
>
> *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008);*see also Lewicki v. Comm'r of Soc. Sec.,* No. 09–11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept.30, 2010)("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.").

*Id*. at *7.

The key point is that "there is no bright-line rule" regarding moderate CPP limitations, and the mere fact that an ALJ found such limitations does not mean the claimant's RFC must include any particular non-exertional limitation; even a limitation to "unskilled work" can be sufficient depending on the claimant's particular limitations. *See e.g., Taylor*, 2011 WL 2682682, at *7 (upholding ALJ decision that "includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration."); *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F.Supp.2d 804, 805-07 (E.D. Mich. 2005) (emphasizing the need for a case-by-case analysis and concluding that a limitation to unskilled work adequately accounts for a moderate deficiency in CPP). As this Court has recognized, "[t]he ultimate question is whether substantial evidence supports the ALJ's choice of limitations in the RFC assessment and corresponding hypothetical; the ALJ need not include 'talismanic language' in his hypothetical whenever he finds the claimant has CPP limitations." *Barnes v. Comm'r of Soc. Sec.*, No. 12-15256, 2013 WL 6328835, at *14 (E.D. Mich. Dec. 5, 2013) (citing *Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001)).

Because there is no bright-line rule requiring an ALJ to account for moderate limitations in CPP in a certain way,[2] the Court must determine whether – given the unique circumstances of this case – the mental limitations included by the ALJ in the RFC are supported by substantial evidence. *See Summers v. Comm'r of Soc. Sec.*, No. 15-10550, 2016 WL 3769377, at *7 (E.D. Mich. June 2, 2016); *Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL 1304991, at *16 (E.D. Mich. Mar. 31, 2014). Here, for the reasons discussed below, the Court answers that question in the affirmative.

> 2. *The ALJ's RFC is Supported by Substantial Evidence*

The only non-exertional limitation the ALJ incorporated into the RFC is that Knapp "can perform simple, routine, and repetitive work." (Tr. 15.) Substantial evidence in the record supports this aspect of the RFC.

First, the ALJ gave "great weight" to the opinion of State Agency Psychologist Jerry Csokasy, Ph.D. (Tr. 18-19). Dr. Csokasy opined that Knapp had moderate difficulties in CPP but that she was "[n]ot significantly limited" in any of the following abilities: performing at a consistent pace without an unreasonable number and length of rest periods, carrying out very short and simple instructions, performing activities within a schedule, maintaining regular attendance, sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruptions from psychologically based symptoms, and making simple work-

---

[2] Indeed, the Sixth Circuit has held that where the ALJ finds a moderate limitation in CPP, it is not *per se* error for the ALJ to issue an RFC with only a limitation to "unskilled work." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) ("Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in [CPP]."). As with other aspects of an ALJ's decision, the question is simply whether the particular RFC limitation in question is supported by substantial evidence in the record. *See Taylor v. Comm'r of Soc. Sec.*, No. 10-12519, 2011 WL 2682682, at *7 (E.D. Mich. May 17, 2011); *Schalk v. Comm'r of Soc. Sec.*, No. 10-13894, 2011 WL 4406824, at *11 (E.D. Mich. Aug. 30, 2011).

related decisions. (Tr. 99). In light of these findings, Dr. Csokasy's ultimate opinion was that Knapp had the mental ability to perform, "on a sustained basis," work that is "simple, repetitive, and routine." (*Id*.). Thus, the RFC adopted by the ALJ is entirely consistent with Dr. Csokasy's opinion, and Knapp has not shown any error by the ALJ in relying on that opinion.

Moreover, in the context of discussing Dr. Csokasy's opinion, the ALJ recognized that under the relevant Listings for mental impairments, "moderate" means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." (Tr. 19) (quoting Listing 12.00(F)(2)(c)). The ALJ further explained that as applied to Knapp, this meant that although she experienced "more than a slight limitation in this area" she "is still able to function satisfactorily." (*Id.*). This shows that nothing about Dr. Csokasy's opinion compelled him to find that Knapp suffered from greater non-exertional limitations, and that the ALJ reasonably reconciled the facts and the standards.

Because "an ALJ is permitted to rely on state agency physicians' opinions to the same extent as she may rely on opinions from other sources," *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015), all of the foregoing gives substantial support to the ALJ's decision to limit Knapp's RFC to "simple, routine, and repetitive work" without any additional CPP limitations. (Tr. 15). The law provides, however, that before an ALJ accords significant weight to the opinion of a nonexamining source who has not reviewed the entire record, he must give 'some indication' that he 'at least considered' that the source did not review the entire record. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016). Here, the ALJ satisfied that obligation by acknowledging that new evidence was submitted since Csokasy's opinion, which the ALJ determined was not material. (Tr. 18). Indeed, the ALJ considered the evidence from after Dr. Csokasy provided his opinion in July 2016, including treatment records from 2017-18

and Plaintiff's hearing testimony in May 2018. (*Id*.). For example, the ALJ noted that in March 2018, Knapp's providers indicated that she did not appear anxious, had an appropriate affect, had normal speech and thought process, and was attentive. (Tr. 18, 2400-03). The same records reflect that Knapp reported that she was not experiencing decreased concentration or memory impairment. (Tr. 2400). The doctor who saw her wrote that she could return to work after just a few days off. (Tr. 2403). Similarly, other doctors' notes closer in time to Dr. Csokasy's opinion reflect that Knapp's speech, behavior, judgment and thought content were normal, and that she had normal cognition and memory, and was "attentive." (Tr. 2372, 2379). The ALJ also appropriately noted that no doctor that treated Knapp imposed any restrictions that exceed the RFC adopted by the ALJ. (Tr. 18).

In addition to validating the ALJ's reliance on Dr. Csokasy's opinion, these other physicians' observations supply additional evidence in support of the ALJ's RFC determination. The ALJ relied on other evidence, as well, including that Knapp was able to work up to 18 hours per week during the pertinent period and her employer's comments about her efficiency at work. (Tr. 13, 17). Indeed, the ALJ recognized that Knapp's employer indicated in a Work Activity Questionnaire that she completed her work during the pertinent period "in the same amount of time as employees in similar positions." (Tr. 17). Her employer further indicated in that during the pertinent period, other aspects of Knapp's job performance were also adequate:

- Her productivity was "100%" when "compared to other employees in similar positions and similar pay rates" and she completed her work "in the same amount of time as employees in similar positions";

- Her work was "satisfactory when compared to another employee who worked in a similar position";

- She "regularly report[ed] for work as scheduled," and she was not frequently absent from work; and

11

- She did not receive any "special assistance," such as "[f]ewer or easier duties," "[m]ore breaks/rest periods," "[l]ower production standards," "[e]xtra help/supervision," or "[l]ower quality standards."

(Tr. 353-54).

The ALJ also relied on Knapp's admissions in her Function Report that she was able to manage her finances, drive a car, and grocery shop for two to three hours at a time. (Tr. 14, 297). And, in the portion of the Function Report that asked Knapp to identify impairments that affected various abilities, she did not indicate that she had any limitations with respect to "Completing Tasks" or "Concentration." (Tr. 299). The Court also notes that to the extent Knapp took breaks during her work shifts, she testified she did so because of pain in her hips, not because of any issues with concentration or processing abilities. (Tr. 46).

Taken together, all of the foregoing constitutes substantial evidence in support of the RFC adopted by the ALJ.

In her motion for summary judgment, Knapp focuses on the ALJ's handling of the consulting examination opinion issued by Anthony Gensterblum, Ph.D. in July of 2016 (Tr. 19). (ECF No. 14, PageID.2503-04.) Dr. Gensterblum administered to Knapp the Wechsler Adult Intelligence Scale ("WAIS") test, which revealed a Full Scale IQ of 61, indicating an "extremely low level of functioning." (Tr. 764). Dr. Gensterblum opined that Knapp's "ability to persist and maintain expected rate of performance would be limited," and that "her ability to learn new routines [was] extremely limited." (*Id.*). At the same time, Dr. Gensterblum endorsed all three of the terms the ALJ included in his RFC finding, opining that Knapp "can complete simple and repetitive tasks" and emphasizing that "[s]he currently is working approximately 18 hours a week in a job that is highly routine." (*Id.*). The ALJ thus fairly summarized Dr. Gensterblum's opinion

as finding that Knapp "could complete simple and repetitive tasks with limited ability to persist or maintain expected rate of performance." (Tr. 19). The ALJ then stated that he was giving the opinion "partial weight, as it is consistent with the residual functional capacity above." (*Id.*). Knapp takes issue with the ALJ's statement, contending that it "does not follow as there is nothing in the RFC concerning the claimant's ability to learn new routines or maintain an expected rate of performance . . ." (ECF No. 14, PageID.2503.)

The Commissioner recognizes that the ALJ "could have expressed himself more clearly," and then contends that "what he plainly meant was that he credited the parts of Dr. Gensterblum's opinion that were consistent with the RFC finding and discounted the rest of it, including the opinion that Plaintiff's 'ability to both persist and maintain an expected rate of performance would be limited.'" (ECF No. 17, PageID.2528.) The Court agrees with the Commissioner that the ALJ's statement could have been clearer, though it disagrees that the ALJ's intended meaning is "plain."

On the one hand, the Commissioner's interpretation could be correct, as the ALJ did not incorporate into the RFC a separate limitation about Knapp's ability to maintain an expected rate of performance and cited evidence that contradicted Dr. Gensterblum's statements about how Knapp was performing in her job, all of which statements came from Knapp. (*Compare* Tr. 353-354 and Tr. 764; *see also* Tr. 17). On the other hand, the ALJ could have been referring back to his earlier recognition about the Listing's definition of "moderate," and Dr. Csokasy's finding that despite Knapp's CPP limitations, she still retained the ability to perform, "on a sustained basis," work that is "simple, repetitive, and routine." (*See supra* at 10; Tr. 99). At any rate, Dr. Gensterblum's opinion did not include any particular additional non-exertional limitation that Knapp claims the ALJ should have imposed,[3] and it is clear from the ALJ's analysis throughout

---

[3] The Court notes that the record does not contain any opinion from Dr. Gensterblum (or any other

the decision, that he did not believe Knapp's RFC required a specific CPP limitation. As explained above, *see supra* at 9-12, the ALJ's decision to adopt an RFC that limited Knapp to "simple, routine, and repetitive work" without an additional CPP limitation, is supported by substantial evidence, including Dr. Csokasy's opinion which the ALJ gave great weight to, that she could perform such work. Accordingly, any error the ALJ made in failing to more clearly explain his handling of Dr. Gensterblum's opinion is harmless because if the ALJ's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286.

For all these reasons, the RFC determined by the ALJ is consistent with the relevant case law and is supported by substantial evidence  Accordingly, the final decision of the Commissioner should be affirmed.

### III.    CONCLUSION

For the reasons set forth above, the Court recommends that the Commissioner's Motion for Summary Judgment (**ECF No. 17**) be **GRANTED**, Knapp's Motion for Summary Judgment (**ECF No.14**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

Dated: November 30, 2020                s/David R. Grand
Ann Arbor, Michigan                     DAVID R. GRAND
                                        United States Magistrate Judge

---

source, for that matter) stating that Knapp would be off task 20% to 30% of the time, as she seems to indicate. (ECF No. 14, PageID.2503-2504.)

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 30, 2020.

s/Eddrey Butts  
EDDREY BUTTS  
Case Manager
